# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |
|---|---|
| VANESSA WILKINS, VICTORIA POUNCY, ANNETTE STAPLETON, AND SHANNON STAPLETON,<br><br>Plaintiff(s),<br><br>-against-<br><br>MARISSA STAPLETON,<br><br>Defendant(s). | Civil Case No.: 6:17-cv-1342-Orl-37GJK<br><br>**CIVIL ACTION**<br><br>**FIRST AMENDED COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

Plaintiffs, VANESSA WILKINS, VICTORIA POUNCY, ANNETTE STAPLETON, AND SHANNON STAPLETON, (hereinafter "Plaintiffs") by and through their undersigned attorney, alleges against the above-named Defendant, MARISSA STAPLETON, the following:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this action for damages resulting Defendant's actions, including but not limited to: Breach of Trust; Breach of Fiduciary Duty; Fraud; Constructive Fraud; Civil Theft; and Tortious Interference with Estate Planning.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 in that this matter is: (i) a civil action wherein the matter in controversy exceeds $75,000.00, exclusive of interest and costs; (ii)  is between citizens of different states; (iii) and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## PARTIES

4.     Plaintiff, Vanessa Wilkins is a natural person and a citizen of Queens County, State of New York.

5.     Plaintiff, Victoria Pouncy is a natural person and a citizen of Spotsylvania County, State of Virginia.

6.     Plaintiff, Annette Stapleton is a natural person and a citizen of Gwinnett County, State of Georgia.

7.     Plaintiff, Shannon Stapleton is a natural person and a citizen of Nassau County, State of New York

8.     Defendant, Marissa Stapleton is a natural person and citizen in Orlando County, Florida.

## FACTUAL ALLEGATIONS

9.     On July 15, 2016, James Stapleton passed away.

10.     At the time of Decedent's death, he resided in Orlando, Florida.

11.     Prior to his death, Decedent executed the Revocable Trust of James Stapleton, dated June 23, 2003. (hereinafter the "Trust") **Exhibit A**.

12.     Decedent was the Trustee of the Trust at the time of execution.

13.     Decedent appointed Marissa Stapleton as Successor Trustee in Article 4.02 of the Trust.

14.     On August 25, 2008, Decedent executed an AMENDMENT of THE REVOCABLE TRUST AGREEMENT. **Exhibit B**.

15. Each plaintiff named herein is a beneficiary of the JAMES STAPLETON REVOCABLE TRUST dated June 23, 2003 and amended on August 25, 2008.

16. On August 25, 2008, executed a pour-over Last Will and Testament. **Exhibit C**.

17. Pursuant to ARTICLE 4 of his Last Will and Testament, Decedent's "Residuary Estate" was to be distributed to the James Stapleton Revocable Trust, dated June 23, 2003.

18. Pursuant to Article 5 of his Last Will and Testament, decedent appointed Marissa Stapleton as his Personal Representative.

19. On or about March 1, 2014, Decedent executed a Power of Attorney appointing Marissa Stapleton as his agent-in-fact.

20. Plaintiffs are third-party beneficiaries of the Power of Attorney.

21. Defendant owed a fiduciary duty decedent.

22. Defendant owed a fiduciary duty to the Plaintiffs.

23. Between March 1, 2014 and July 15, 2016, Defendant acting in her capacity as agent-in-fact of the Decedent, transferred assets outside of Decedent's estate, which otherwise would have passed to Plaintiffs through the Trust.

24. Between March 1, 2014 and July 15, 2016, Defendant acting in her capacity as agent-in-fact of the Decedent, transferred assets outside Decedent's estate, for her own personal benefit.

25. Upon information and belief, Plaintiffs estimate such transfers exceed $500,000.

26. Plaintiffs have requested a full accounting of Decedent's assets during the period of time, which Defendant acted as Decedent's agent-in-fact.

27. Defendant has denied such requests.

## COUNT I

### CONSTRUCTIVE FRAUD

28.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney was in a fiduciary relationship Decedent.

29.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney was in a confidential relationship Decedent.

30.     Defendant knew that Plaintiffs were beneficiaries pursuant to the terms of Decedent's Trust.

31.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney was in a fiduciary relationship with Plaintiffs.

32.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney owed a duty to Decedent.

33.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney owed a duty to Plaintiffs.

34.     Defendant abused her fiduciary relationship with Decedent by self-dealing through transferring assets for her personal use.

35.      Defendant abused her fiduciary relationship with Decedent by self-dealing through changing the titles of certain accounts so that such accounts would pass directly to her, out side of the Trust and Last Will and Testament.

36.     Defendant beached her duty to Plaintiffs by transferring assets of the Decedent for her personal use, which otherwise would have passed to Plaintiffs.

37.     Defendant beached her duty to Plaintiffs by changing the titles of certain accounts of Decedent so that such accounts would pass directly to her, outside of Decedent's Trust and Last Will and Testament.

38.     Defendant's actions caused certain assets to pass outside of Decedent's Trust and Last Will and Testament.

39.     Plaintiffs were harmed and suffered damages by Defendant's actions, as they were unable to receive the full distribution intended by Decedent.

40.     Upon information and belief, Plaintiffs estimate such damages exceed $500,000.

## COUNT II

## BREACH OF FIDUCIARY DUTY

41.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney was in a fiduciary relationship Decedent.

42.     Defendant knew that Plaintiffs were beneficiaries pursuant to the terms of Decedent's Trust.

43.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney owed a duty to Decedent.

44.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney owed a duty to Plaintiffs.

45.     Defendant beached her duty to Plaintiffs by transferring assets of the Decedent for her personal use, which otherwise would have passed to Plaintiffs.

46.     Defendant beached her duty to Plaintiffs by changing the titles of certain accounts of Decedent so that such accounts would pass directly to her, outside of Decedent's Trust and Last Will and Testament.

47.     Defendant's actions caused certain assets to pass outside of Decedent's Trust and Last Will and Testament.

48.     Plaintiffs were harmed by Defendant's actions, and suffered damages, as they were unable to receive the full distribution intended by Decedent.

49.     Upon information and belief, Plaintiffs estimate such damages exceed $500,000.

## COUNT III

### TORTIOUS INTERFERENCE WITH ESTATE PLANNING

50.     Decedent had a fixed intention of leaving a portion of his estate to Plaintiffs, as set forth in the Trust.

51.     Defendant abused her fiduciary relationship with Decedent by through transferring assets for her personal use.

52.     Defendant abused her fiduciary relationship with Decedent changing the titles of certain accounts so that such accounts would pass directly to her, outside of the Trust and Last Will and Testament.

53.     But for Defendant's wrongful actions, Decedent would have carried out his intentions of distributing his assets through the terms of his Trust.

54.     Defendant abused her fiduciary relationship with Decedent by self-dealing through transferring assets for her personal use.

55.     Defendant abused her fiduciary relationship with Decedent by self-dealing through changing the titles of certain accounts so that such accounts would pass directly to her, out side of the Trust and Last Will and Testament.

56.     Defendant's actions caused certain assets to pass outside of Decedent's Trust and Last Will and Testament.

57.     Plaintiffs were harmed by Defendant's actions, and suffered damages, as they were unable to receive the full distribution intended by Decedent.

58.     Upon information and belief, Plaintiffs estimate such damages exceed $500,000.

## COUNT IV

### CIVIL THEFT

59.     Defendant knowing used her position as agent-in-fact via the 2014 power of attorney to obtained certain assets from Decedent's estate, which otherwise would have passed through his Trust.

60.     Defendant took such action with felonious intend to permanently deprive Plaintiffs of their right to the benefit of the full distribution of Decedent's Trust property.

61.     Defendant's actions caused certain assets to pass outside of Decedent's Trust and Last Will and Testament.

62.     Plaintiffs were harmed by Defendant's actions, and suffered damages, as they were unable to receive the full distribution intended by Decedent.

63.     Upon information and belief, Plaintiffs estimate such damages exceed $500,000.

## COUNT IV

### BREACH OF TRUST

64.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney was in a fiduciary relationship Decedent.

65.     Defendant knew that Plaintiffs were beneficiaries pursuant to the terms of Decedent's Trust.

66.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney owed a duty to Decedent.

67.     Defendant as Decedent's agent-in-fact via the 2014 power of attorney owed a duty to Plaintiffs.

68.     Defendant beached her duty to Plaintiffs by transferring assets of the Decedent for her personal use, which otherwise would have passed to Plaintiffs.

69.     Defendant beached her duty to Plaintiffs by changing the titles of certain accounts of Decedent so that such accounts would pass directly to her, outside of Decedent's Trust and Last Will and Testament.

70.     Defendant's actions caused certain assets to pass outside of Decedent's Trust and Last Will and Testament.

71.     Plaintiffs were harmed by Defendant's actions, and suffered damages, as they were unable to receive the full distribution intended by Decedent.

72.     Upon information and belief, Plaintiffs estimate such damages exceed $500,000.

**WHEREFORE,** Plaintiffs demand judgment against Defendant as follows:

(a)     Awarding actual damages;

(b)     Awarding statutory damages;

(c)     Pre-judgment interest;

(d)     Post judgment interest; and

(e)     Awarding Plaintiffs costs of this Action, including reasonable attorneys' fees and expenses; and

(f)     Awarding Plaintiffs such other and further relief as the Court may deem just and proper.


Dated: August 2, 2017

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a

trial by jury on all issues so triable.

*/s/ Alison Kerestes*
Alison Kerestes
Kerestes Law Firm PLLC
215 East Livingston Street
Orlando, FL 32801
(407) 459-8415
alison@keresteslawfirm.com

Dated: August 2, 2017

# Exhibit

# A

# REVOCABLE TRUST

# OF

# JAMES STAPLETON

This TRUST Agreement is entered into by and between **JAMES STAPLETON** of **313 KASSIK CIR., ORLANDO, FL 32824-5808**, hereinafter referred to as the Grantor, and **JAMES STAPLETON**, hereinafter referred to as the Trustee.

The Grantor hereby revokes all prior wills and codicils.

# WITNESSETH:

WHEREAS, the Grantor has transferred and delivered to the Trustee the assets described and set forth in Schedule A, which is attached hereto and is made a part hereof;

WHEREAS, the Grantor, or any other person, shall have the right to transfer at any time additional assets to the Trustee to be administered hereunder;

NOW, THEREFORE, it is hereby agreed that the Trustee shall hold and administer all assets which may come into this Trust in accordance with the terms, provisions, and conditions of this Trust Agreement.

The Trust shall be known as:

**"The JAMES STAPLETON Revocable Living Trust, dated** <u>  JUN 2 3 2003  </u> **,**

**JAMES STAPLETON, Grantor and/or Trustee."**

# ARTICLE I

# DISPOSITION DURING LIFETIME OF GRANTOR

1.01    **Rights of Grantor**: During the lifetime of the Grantor, the Grantor expressly reserves to himself, the following rights:

(a)    to transfer, convey, or assign any life insurance policies to this Trust;

(b)    to add or withdraw, at any time, assets, whether personal, real or mixed, to or from this Trust;

(c)    to amend or revoke, at any time, this Agreement in whole, or in part.

1.02    **Tax Treatment of Revocable "Grantor's Trust"**:  For income tax purposes, this Trust shall be treated as a revocable "Grantor's Trust" pursuant to IRC Section 676.  All items of income and expense related to the assets of this Declaration of Trust or its operation shall be reported by the Grantor as if owned individually by him on the Grantor's conventional 1040 individual tax return.

1.03    **Use of Trust Identification Number**:  As long as the Grantor is living, this entire Trust is revocable.  The Grantor shall use the Grantor's Social Security number as the Trust Identification Number:

**JAMES STAPLETON**          **S.S. No.**          **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**

---

Upon the death of the Grantor, the entire Trust becomes irrevocable by its terms, and assets retained in Trust should be identified by using the Employer Identification Number that the IRS assigns to this Trust when filing the Trust tax return Form 1041.

When the Trust becomes irrevocable, a Form 1041 tax return or appropriate alternative form, as specified by IRS regulations, shall be filed annually for income and expenses relating to assets retained in the irrevocable Trust.

1.04   **Distribution of Income and Principal**:   Unless specifically prohibited by other provisions of this Trust, during the Grantor's life, the Trustee(s) shall pay to or for the benefit of the Grantor, the Grantor's dependents and anyone else who is specifically authorized by the terms of this Trust to receive or benefit from such payments, such amounts of the income and/or principal of the Trust as the Grantor may so direct either verbally or in writing.

If the Grantor becomes mentally or physically incapacitated, as defined in the Grantor's Competency Clause Addendum or as determined by any court of law, then the Trustee shall, unless specifically prohibited by other provisions of this Trust, pay to or for the benefit of the Grantor, the Grantor's dependents and anyone else who is specifically authorized by the terms of this Trust to receive or benefit from such payments, such amounts of income and principal of this Trust, as are necessary for their reasonable support, education, maintenance and health.

The Trustee shall consider, as the Trustee deems advisable and as known to the Trustee at the time of making such distributions, other income or resources of the Grantor, the Grantor's dependents or anyone else who is specifically authorized by the terms of this Trust to receive or benefit from such payments, before making distributions to or on behalf of any individual.

Any accrued or accumulated income existing in the Trust at the time of the death of the Grantor shall be transferred to principal of this Trust.

1.05   **Insurance Policies**:  The Grantor retains the right to direct the Trustee in regard to any policies assigned hereunder to change the beneficiary, to assign, sell or hypothecate such policies; to borrow any amounts permitted by such policies; and to exercise any other privileges permitted by the policies.  The Trustee is in no way obligated or required to pay any premiums on any life insurance policies held herein and all obligations or responsibilities to currently maintain such policies shall be at the sole discretion of the Grantor.

1.06   **Residence**:  If the Grantor transfers the Grantor's residence or other real estate to the Trust during the Grantor's lifetime, the Trustee shall not be required to obtain any appraisals, maintain the property, insure the premises or pay real estate taxes thereon.

# ARTICLE II

# TRUSTEE'S DUTIES AND RIGHTS UPON THE GRANTOR'S DEATH

2.01   **Insurance**:   Upon the Grantor's death, the Trustee shall collect the proceeds of the life insurance policies on the Grantor's life which are payable to the Trustee, and shall hold and administer such insurance proceeds and all other property which may be in or added to this Trust by the Grantor's Will, or from any other source.

2.02   **Expenses of Grantor's Estate**:   Upon the death of Grantor, the Trustee in its sole discretion, may:

(a)      Distribute cash to the Grantor's estate in such amounts to pay any or all claims, debts, administration expenses, taxes or funeral expenses of the estate; such amounts may be distributed by the Trustee without the Trustee requiring any repayment or reimbursement from the estate or its beneficiaries; and/or

(b)      Lend cash to the Grantor's estate in such amounts to pay any or all claims, debts, administration expenses, taxes or funeral expenses of the estate and to lend such amounts at such rates, maturity dates and upon such security as the Trustee deems advisable.

(c)      The Trustee is hereby specifically authorized in its sole and absolute discretion to purchase or exchange any property of the estate at the appraised value without being liable for any loss.

2.03   **Other Duties and Responsibilities:**   The trustee of a trust may have duties and responsibilities in addition to those described in the instrument creating the trust.  If you have questions you should obtain legal advise.

## ARTICLE III

## DISPOSITION OF TRUST ESTATE AFTER DEATH OF GRANTOR

3.01   **Allocation and Distribution of Trust**:  Upon the death of the Grantor, and after the debts and other obligations and provisions of the Trust Estate have been satisfied and any special distributions and retentions have been made, the balance of the Trust Estate shall be held, managed and distributed as follows:

(a)   **Division into Shares**:   Except as authorized in Sections 4.27 and 4.28 of ARTICLE IV or as specifically required in Section 3.01 (d) of ARTICLE III, the Trustee shall first make any special distributions as set forth below in that Subsection entitled "Special Distributions and Personal Property Distributions".  The Trustee shall then allocate the balance of the Trust Assets into separate shares so as to provide one (1) share for each person named as a primary beneficiary of the Grantor.

Each share shall be allocated as follows:

| Primary Beneficiary | Relationship to Grantor | Share | Percent |
|---|---|---|---|
| VICTORIA POUNCY | CHILD | 1 | 11.11% |
| ANNETTE STAPLETON | CHILD | 1 | 11.11% |
| VANESSA WILKINS | CHILD | 1 | 11.11% |
| MARISSA STAPLETON | CHILD | 1 | 11.11% |
| SHAWANA STAPLETON | CHILD | 1 | 11.11% |
| SHANNON STAPLETON | GRANDCHILD | 1 | 11.11% |
| TASHA TOPPIN | GRANDCHILD | 1 | 11.11% |

| | | | |
|---|---|---|---|
| **TOYA TOPPIN** | GRANDCHILD | 1 | 11.11% |
| **TURQUOISE TOPPIN** | GRANDCHILD | 1 | 11.11% |

(b)        **Distribution of Trust**:  Upon the death of the Grantor, the Trustee shall retain in

Trust, or distribute, the residual of the Grantor's estate as hereinafter specified.


Except as authorized in Sections 4.27 and 4.28 of ARTICLE IV or as specifically

required in Section 3.01 (d) of ARTICLE III, the Trustee shall distribute those parts of

the estate allocated to **VICTORIA POUNCY, ANNETTE STAPLETON, VANESSA**

**WILKINS, MARISSA STAPLETON, SHAWANA STAPLETON, SHANNON**

**STAPLETON, TASHA TOPPIN, TOYA TOPPIN AND TURQUOISE TOPPIN,**

pursuant to the rules enumerated below.


If a beneficiary is twenty-five (25) years of age or more, then that beneficiary

share of the Trust assets shall be distributed outright as soon as is reasonable and

practicable.


(c)        **Payments for the Benefit of**:  If an intended beneficiary of Trust assets is less

than twenty-five (25) years of age, that beneficiary's share of the assets shall be retained in

Trust for the benefit of that beneficiary until he or she attains the age of twenty-five (25)

years.


During such times as any share is held in Trust, the Trustee shall pay to, or for the

benefit of, the intended beneficiaries of said shares, such parts of the income and principal

the Trustee deems advisable, in its absolute and sole discretion, for their health,

maintenance, support and education (including college, university, business, professional or vocational training) unless the shares hereinafter set forth specifically provide otherwise or until such shares are finally distributed.

With respect to any distribution made hereunder, the Trustee need not require the exhaustion of personal resources as a condition for making disbursements under the authority of this Article.  The judgment of the Trustee as to the propriety and amount of all such payments shall be conclusive.

The Trustee may, however, in his or her discretion, require as a condition precedent to the distribution of any Trust assets for support or advancement, that the beneficiary furnish evidence of his or her financial condition, income, earning capacity and assets, in form and content satisfactory to the Trustee.  The Trustee shall be entitled to rely upon the written certification of such beneficiary or the guardian of such beneficiary as to the nature and extent of such beneficiary's need for support, and the inadequacy of such beneficiary's resources apart from the Trust.  The Trustee shall not be required to make further inquiry as to the authenticity of the facts so certified.

When a primary beneficiary attains the age of twenty-five (25) years, or at any time thereafter, the Trustee shall pay and distribute in cash or in kind to such beneficiary all of the assets of his or her share, upon the written request of said beneficiary.

(d)      **Special Provisions**:  Except as specifically authorized in Sections 4.27, 4.28 and 4.29 of ARTICLE IV, the Trustee shall abide by any Special Provisions which may be set

forth in this subsection.  Special Provisions shall be controlling in all instances where they may be in conflict with other provisions of ARTICLE III.

(e)   **Special Distributions and Personal Property Distribution**:  Upon the death of the Grantor, the Trustee shall make the following special distributions.

Grantor's daughter, Marissa Stapleton, shall receive whatever house is owned by the Trust, whatever real estate it is situated upon and all things described in the Grantor's document entitled "ASSIGNMENT OF FURNITURE, FURNISHINGS AND PERSONAL EFFECTS".

Grantor's daughter, Marissa Stapleton, shall receive all the money that comes into the Trust from the Nationwide life insurance policy number 4263157 as a result of the Trust having been named the beneficiary of said policy.

Grantor's daughter, Marissa Stapleton, and Grantor's step-child, Laurelle Williams, shall receive equal shares of all money that comes into the Trust from the McCoy Credit Union account number 127532.

The Grantor requests the Trustee to abide by **"Schedule D"** which is the Grantor's intentions directing the disposition of personal and household effects of every kind including, but not limited to furniture, appliances, furnishings, pictures, china, silverware, glass, books, jewelry, wearing apparel, and all policies of fire, burglary, property damage, and other insurance on or in connection with the use of this property.

Otherwise, the personal and household effects of the Grantor shall be distributed with the remaining assets of the Trust Estate.

Except as authorized in Sections 4.27 and 4.28 of ARTICLE IV or as specifically required in Section 3.01 (d) of ARTICLE III, the Trustee may also, if he or she considers it advisable to do so, distribute or advance from said special distributions, at any time, to the intended beneficiaries, without interest, sufficient amounts to enable them to marry; to purchase a home; enter, purchase or improve a business; establish a professional office; take post-graduate work; purchase an automobile; or for other similar purposes.   The Trustee's decision shall be final in all events.

In the event that any intended beneficiary of a special distribution predeceases the distribution or refuses the distribution, and there is no alternate designated to receive that distribution, or the alternate is also deceased or refuses the distribution, then the portion of this Trust which has been allocated for that special distribution shall be included with the balance of the Trust Estate for division into shares.

3.02   **Alternate Distribution of Shares**:   Except as authorized in Sections 4.27 and 4.28 of ARTICLE IV or as specifically required in Section 3.01 (d) of ARTICLE III, if a primary beneficiary of this Trust dies prior to a complete distribution of his or her share or refuses any portion of his or her share, the following rules shall be followed in determining the distribution of the assets which remain to be distributed or which have been refused, which are hereafter referred to as "said assets":

(a)      Any person who has been specifically disinherited and prohibited from receiving a portion of the Trust assets is not an eligible beneficiary and shall be ignored and treated as though he or she does not exist in the application of these rules.

(b)      Said assets shall be divided equally among that primary beneficiary's then living children (issue) and his or her deceased children who have then living children (issue). Each resulting share shall be distributed pursuant to the rules for that share.

(c)      If a primary beneficiary has no then living children (issue) and no deceased children who have then living children (issue), then said primary beneficiary's share of the Trust assets shall be divided equally among the then living primary beneficiaries and all deceased primary beneficiaries who have then living children (issue).  Each resulting share shall be distributed pursuant to the rules for that share.

(d)      If a child of a primary beneficiary dies before a complete distribution of his or her share or refuses any part of his or her share of the Trust assets, then said assets shall be divided equally among that child's then living children (issue) and his or her deceased children who have then living children (issue).  Each resulting share shall be distributed pursuant to the rules for that share.

(e)      If a child of a primary beneficiary dies before a complete distribution of his or her share or refuses any part of his or her share of the Trust assets and has no then living children (issue) or deceased children who have then living children (issue), said assets shall be divided equally among all the then living children of the primary

beneficiary, and all deceased children of the primary beneficiary who have then living children (issue). Each resulting share shall be distributed pursuant to the rules for that share.

(f)     If a primary beneficiary's child dies before a complete distribution of his or her share or refuses any part of his or her share of the Trust assets and has no then living children (issue) or deceased children who have then living children (issue) and if the primary beneficiary has no living children (issue) or deceased children who have then living children (issue), then said assets shall be divided equally among the then living primary beneficiaries and all deceased primary beneficiaries who have then living children (issue). Each resulting share shall be distributed pursuant to the rules for that share.

(g)     In all events, the Trustee shall divide the Trust assets, for accounting purposes, into as many shares as are necessary to provide one equal share for each resulting beneficiary described above.

(h)     Whenever a beneficiary is less than twenty-five (25) years of age, that beneficiary's share of the assets shall be retained in Trust for the benefit of that beneficiary until he or she attains the age of twenty-five (25) years.

(i)     For all shares that are being held in Trust, the Trustee need not physically divide the Trust assets into shares, but may regard all shares as a single fund for investment

---

purposes if the Trustee desires.  However, all distributions of income and principal thereafter made to any beneficiary shall be deducted from that beneficiary's respective share.

(j)     If not specifically prohibited or otherwise altered by other terms of this Trust, the Trustee may, after taking into consideration the income and means of support from other sources that may be available to a beneficiary who is less than twenty-five (25) years of age, pay to such beneficiary, or to others on behalf of such beneficiary, such amounts of the net income and principal of that beneficiary's share, as the Trustee deems necessary for that beneficiary's health, welfare, maintenance, support and education, (including college, university, business, professional or vocational training) until such beneficiary reaches age twenty-five (25) or until  such share is finally distributed, whichever occurs first.

(k)     With respect to any distribution made hereunder, the Trustee need not require the exhaustion of personal resources as a condition for making disbursements under the authority of this Article.  The judgment of the Trustee as to the propriety and amount of all such payments shall be conclusive.

(l)     The Trustee may, at his or her sole discretion and as a condition precedent to the distribution of any Trust assets for support or advancement, require that the beneficiary furnish evidence of his or her financial condition, income, earning capacity and assets, in form and content satisfactory to the Trustee.  The Trustee shall be entitled to rely upon the written certification of such beneficiary or the guardian of such beneficiary as to the nature and extent of such beneficiary's need for support, and the inadequacy of such

---

beneficiary's resources apart from the Trust.  The Trustee shall not be required to make further inquiry as to the authenticity of the facts so certified.

(m)     When a beneficiary attains the age of twenty-five (25) years, or at any time thereafter, the Trustee shall pay and distribute in cash or in kind to such beneficiary all of the assets of his or her share, upon the written request of said beneficiary.

(n)     If at any time before final distribution of any share of this Trust, the Grantors and all intended beneficiaries of that share have died or ceased to exist, and no other disposition of the assets is directed by this instrument, then the Trustee shall distribute said assets pursuant to the paragraph entitled "Ultimate Distribution".

3.03    **Ultimate Distribution**:  If at any time before final distribution of any share of this Trust the Grantor and all intended beneficiaries of that share shall have died or ceased to exist and no other disposition of the assets is directed by this instrument, the Trustee shall distribute said assets, including accumulated income, in accordance with the Statute of Descent and Distribution in effect at the time of the death of the Grantor.

# ARTICLE IV

## SUCCESSOR TRUSTEE AND TRUSTEE'S POWERS

4.01    **Original Trustee**:  The original Trustee under this Declaration of Trust shall be **JAMES STAPLETON**, to serve with all of the obligations, powers, and authority contained within this Trust Agreement.

---

The **JAMES STAPLETON** Trust                                                                                              14

4.02   **Successor Trustee(s)**:   Upon the death of the original Trustee, or if for any reason whatsoever he ceases to serve as Trustee hereunder, the Grantor nominates and appoints **MARISSA STAPLETON** to serve as Trustee hereunder without the approval of the court.   If **MARISSA STAPLETON** is unable or unwilling to serve, or to continue to serve, for any reason whatsoever, then and in that event the Grantor nominates and appoints **YOLANDA DRAYTON** to serve as Trustee hereunder, without the approval of any court.

4.03   **Co-Trustees**: **Powers of Successor Trustees**:   When two or more persons are named to act simultaneously with another designated Trustee, the Co-Trustees serving must act in concert.

4.04   **Succession of Trustees**:   Should any one or more of those named fail to qualify or cease to act as Trustee, then the Trustee shall be the next one in the order named who qualifies.

4.05   **Resignation of the Trustee**:   The Trustee may resign as Trustee at any time by so notifying the persons receiving Trust income payments.   The Trustee shall then transfer all assets to a successor trustee which may be an independent trustee, corporate trustee or otherwise, which is selected by a majority of the Trust's income beneficiaries who are twenty-one (21) years or more of age.   The Successor Trustee shall be vested with all powers and duties of the original Trustee.

4.06  **Selection of new Trustee:**  Should all of the above-named persons be unable or unwilling to act as Trustee, the current income beneficiaries (or their guardians) holding a majority Trust interest shall select a Successor Trustee.

4.07  **Powers of Trustee(s)**: The Trustee shall have in addition to all powers and authorities conferred by law, the powers set forth in the remainder of ARTICLE IV which shall be exercised at all times to accomplish the stated objectives and purposes of this Trust. Anyone serving as Successor Trustee during the life of either of the Grantor must, unless specifically authorized in writing by the terms of this Trust or otherwise by the Grantor, manage all assets and take all actions to benefit the Grantor for the remainder of the Grantor's life.

4.08  **Borrowing**:  To borrow from itself or others such sums of money as may be required for the purposes of the Trust(s); to assure the loans by a pledge or mortgage of any of the bonds, stock, real estate, or other property or investments held in Trust; and to execute plain or collateral notes or other evidence of indebtedness therefore.  The Trustee has authority to mortgage or pledge Trust property to secure any personal loan being made to the Grantor(s) in his/her "individual" capacity.

4.09  **Investments**:

(a)  To hold, manage, retain and administer in the Trustee's sole discretion, any property coming into its possession in the same form of investment as it was received by the Trustee even though such retention may result in an excess concentration in one class

---

of property and without incurring liability for loss of principal or income caused by the decline in value of any investment;

(b)     To sell or exchange at public or private sale, lease, pledge, mortgage, donate, abandon or otherwise dispose of, deal with, or encumber (for any period of time, whether or not ending during the term of the Trust), any real or personal property comprising part of the Trust estate;

(c)     To invest and reinvest any money, whether income or principal, in bonds, stocks, notes, real estate mortgages, securities, mutual funds, life insurance policies, or in any other property, real or personal, or in a common trust fund maintained by the Trustee, without being limited by any laws of the State regarding investments by Trustees now or hereafter in effect, including interest bearing accounts in or certificates issued by any banking department, any money market funds maintained or offered by the Trustee, and specifically those funds in which the Trustee charges a separate management fee.

(d)     To buy, sell, and trade commodities and exercise every other right, power, and privilege associated with this kind of activity.

(e)     To maintain an un-invested cash reserve, without liability for interest thereon;

(f)     To hold any unproductive property and to convert unproductive property to productive property or productive property to unproductive property.

---

The **JAMES STAPLETON** Trust                                                    17

4.10   **Nominee**:  To cause any security or property to be issued, held, transferred or registered in or to the name of a nominee or in such form that title will pass by delivery.

4.11   **Securities**:

(a)   To vote by proxy or in person, and exercise all rights in relation to stocks and securities in the Trust, including without limitation the right to consent to the reorganization, consolidation, liquidation, readjustment of financial structure or sale of the assets of any corporation or other organization in which the Trust has an interest.

(b)   To participate in voting trusts and pooling agreements.

(c)   To exercise or sell stock subscription or conversion rights.

(d)   To open an account with a brokerage firm of the choosing of the Trustee in the Trustee's name, in the Trustee's own behalf, for the purpose of purchasing and selling of all kinds of securities and authorizing such brokerage firm to act upon any orders, including margin orders, options, both covered and uncovered, instructions with respect to such accounts and/or the delivery of securities or money therefrom and received from said Trustee; and to retain as an investment any securities or other property received through the exercise of any of the foregoing powers.

(e)   To exercise any option to purchase stock under any stock option purchase plan in which any decedent beneficiary is a participant or may hold such option rights to the extent that any such option rights may be exercised by the Trustee even though the stock

involved is stock of a corporation which may be serving as corporate Trustee hereunder, regardless of the amount of such stock or the percentage of the Trust Estate which may be invested in such stock before or after any purchase under such option.

(f)  To buy, sell and trade in securities of any nature (including short sales) on margin, and for such purposes may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by him with such brokers as security for loans and advances made to the Trustee.

(g)  To sign, deliver and/or receive any documents necessary to carry out the powers contained within this paragraph.

4.12  **Real Estate**:  The Trustee shall allow the Grantor to occupy and use, until his or her death, any home (or any investment therein) owned by this Trust or owned or used by either the Grantor or his or her spouse.

On the death of the Grantor, in the discretion of the Trustee, any home (or any interest therein) owned by this Trust or owned or used by the Grantor or his or her spouse at the time of the Grantor's death may be financially supported by the Trustee for use as a residence by the minor children, if any, of the Grantor.  The provisions of this Paragraph shall apply, notwithstanding the fact that a child having such residence is not a Beneficiary of this Trust.

Subject to the foregoing occupancies, any such home (or interest therein) held by the Trustee, or the proceeds from the sale thereof, shall be part of the principal of this Trust. All taxes, insurance, repairs, and assessments concerning such home shall, in the discretion of the Trustee, be paid out of the Trust Estate.

4.13  **Precious Metals, General, Limited and Family Partnerships**: The Trustee is empowered to operate, either solely or in conjunction with others, any business operation or enterprise of any nature, whether it be general, limited, or family partnership, for as long a time and in such a manner as the Trustee deems proper for the best interest of the Trust. The Trustee is empowered to purchase and sell, directly or indirectly, precious metals, limited partnerships of any type, investment quality gems, rare coins and stamps, and objects of art.

4.14  **Minors**: To make payments directly to minor beneficiaries, to the person with whom minors are living, or to a custodian under the Transfers to Minors Act, without requiring the appointment of a legal guardian to receive such payments. A receipt signed by the minor beneficiary or such other person shall discharge the Trustee of any liability.

4.15  **Continuing or Incorporating a Business**: To continue, incorporate or liquidate any business without liability for any losses, at any time without having to comply with State statutes requiring periodic accounting to the Probate Court.

4.16  **Reliance on Documents**: To rely on affidavits, certificates, letters, statements, telegrams or other forms of notice which the Trustee shall believe to be genuine, without liability,

---

provided the Trustee acts in good faith and without knowledge of any condition which may affect distributions or operation of this Trust, or the status of any beneficiary.

4.17   **Income and Principal**:  The Trustee shall have the power and the authority to determine income and principal, and to determine how receipts and disbursements, including the fees of the Trustee, shall be credited, charged, or apportioned as between income and principal; however, all such determination shall be made in accordance with the law of the state of the situs of the Trust and the decision and the accounts of the Trustee in accordance with said provisions shall be binding on all persons in interest.

Notwithstanding the foregoing, the Trustee shall:

(1)   Allocate to principal all dividends or other payments made by any corporation or mutual investment company that are designated by the company as a distribution of capital gains;

(2)   Where a premium has been paid or a discount received in connection with the purchase of a bond, amortize such premium or discount by making an appropriate charge or credit to income as the case may be; and,

(3)   Charge income from time to time with a reasonable reserve for (a) Depreciation of all income-producing depreciable real or personal property, and capital improvements, and extraordinary repairs on income-producing property; (b) Depletion of all depletable natural resources; (c) All intangible property having a limited economic life.  Such allocations and charges need not be made, however, if written consents are obtained

from all income Beneficiaries and Remaindermen, vested or contingent, living and competent to act.

4.18   **Insurance**:   To carry such insurance, including public liability and property damage insurance, against such hazards to the Trustee or the Trust Estate, in such amounts and with such insurance companies as the Trustee deems advisable.

4.19   **Distribution**:   To make distributions in cash or in kind, without liability for any disparity in income tax basis among beneficiaries, and the Trustee may, but need not, minimize to the extent possible the difference between asset values and income tax basis of property distributed in kind.

4.20   **Claims**:   To arbitrate, defend, enforce, release, compromise, compound, adjust or settle any and all claims in favor of or against this Trust(s) in such manner and on such terms as it, in its sole discretion, shall deem advisable.

4.21   **Employment of Agents**:   To engage or employ such stock, real estate or other brokers, banks, custodians, accountants, attorneys, investment counsel and services, insurance and financial consultants, and other agents, as the Trustee may deem necessary and for such periods of time as the Trustee shall deem proper, without liability for any mistake or default of any such person selected or retained with reasonable care and prudence; and to pay all costs, fees, assessments, taxes, insurance premiums, expenses and charges, including reasonable compensation to the Trustee and to any of the aforesaid persons employed or engaged by the Trustee in connection with the administration hereof.

4.22   **Books of Account**:  To keep full books of account showing the condition of the Trust or of each Trust if more than one, which shall be open at all reasonable times to the inspection of the current income beneficiaries of said Trust(s).  To furnish to said current income beneficiaries annual statements of receipts and disbursements and an annual inventory.

4.23   **Compensation of Trustee**:  Every Trustee shall be entitled to fair and reasonable compensation for services rendered by the fiduciary in an amount not exceeding the customary and prevailing charges for services of a similar character at the time and at the place such services are performed.  Every Trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with such Trustee's duties.

4.24   **Generation Skipping Transfers**:  To allocate any generation-skipping transfer exemption which may be available with respect to the Trust Estate at the time death of the Grantor in whatever way the Trustee, in its sole discretion, may determine to minimize any generation-skipping transfer taxes which may be due by reason of any generation-skipping transfer, either upon the Grantor's death or at any time subsequent thereto, as such terms are defined in the Internal Revenue Code or regulations thereto in effect at the time of said death and the determination by the Trustee with respect to the above shall be conclusive and binding on all interested parties.

4.25   **Payment of Trust Expenses**:  The Trustee shall have the authority to pay all costs, charges and expenses of the Trust Estate, together with reasonable compensation for the Trustee's services hereunder, including services in whole or partial distribution of the

---

Trust Estate; and to employ and compensate from the Trust Estate such agents, assistants and attorneys (including costs of litigation) as in the Trustee's judgment shall be necessary to protect and manage the Trust property and the distribution of Trust assets as set forth herein.

4.26   **Commence or Defend Litigation**:  The Trustee may commence or defend such litigation with respect to the Trust or any property of the Trust Estate as the Trustee may deem advisable at the expense of the Trust.

4.27   **Spendthrift Provision**:  No right or interest of any beneficiary under this Trust shall be subject to assignment, alienation, pledge or encumbrances or be subject to attachment or claims of creditors, including a spouse or divorced spouse; and regardless of the existence of any other basis therefore, any such beneficiary hereunder shall be automatically deemed by the Trustee to become unable to manage personal financial affairs and to remain so until the Trustee, in its absolute discretion, determines otherwise, if, prior to the actual payment or distribution and without the consent or authorized act of the Trustee, (1) such beneficiary attempts to assign, alienate, pledge or encumber, or (2) any other person or entity would, but for this provision, acquire any interest in or lien upon, any such income or principal otherwise payable or distributable to such beneficiary.  If this paragraph is in effect for a beneficiary upon his or her death, any trust property remaining in such beneficiary's trust upon his or her death shall be distributed and/or administered in accordance with the terms of such beneficiary's trust as if this paragraph was not in effect for such deceased beneficiary.

4.28    **Power to Postpone Distribution**:   Notwithstanding any of the foregoing provisions hereunder, the Trustee shall have the power to postpone any principal distribution required to be made from a trust to any one or more of its beneficiaries on or after a beneficiary's attainment of a specific age, upon receiving such beneficiary's written request, or the death of a third person (and to postpone to that extent termination of such Trust which might otherwise be required), if the Trustee, in the Trustee's sole but reasonably exercised discretion, determines that, in view of my apparent overall original intent, there is a compelling reason to postpone such distribution, such as the beneficiary's serious disability, a pending divorce, potential or pending creditor claims (possibly relating to such distribution), a serious tax disadvantage to such beneficiary (or such beneficiary's family) if such distribution were made, or similar substantial causes.  Any such postponement of distribution may be continued by the Trustee, in whole or in part, from time to time, up to and including the entire lifetime of the beneficiary.  While such postponement continues, all of the other provisions previously applicable to such Trustee shall continue in effect, except such beneficiary shall only receive distribution from time to time of such amounts from such principal and the income therefrom as the Trustee, in the Trustee's sole discretion, deems appropriate in the best interests of such beneficiary, adding to principal any income not distributed.  Should a beneficiary die before receiving the beneficiary's postponed distribution, such distribution shall be made to the beneficiary's estate.

4.29    **Early Termination of Trust**:   Notwithstanding any restrictions on distribution set forth in this Agreement, if at any time any Trust created hereunder becomes too small to be economically managed, the Trustee, in his or her absolute discretion, may terminate that

---

Trust and distribute all property then subject to the Trust to the income beneficiaries, or the legal representative of such person, each income beneficiary to take an amount proportional to his or her interest in the Trust income, or if each income beneficiary is not entitled to a specified portion of Trust income, each income beneficiary is to take an equal amount.

4.30   **General Powers**:   To do anything for the preservation and management of the Trust Estate that it deems necessary, and to exercise all powers of an absolute owner thereof. The Trustee may act under this Agreement without prior notice to any person and without the approval of any court.

4.31   **Consolidation of Trusts**:   The Trustee may consolidate and merge for all purposes a trust created hereunder with any other trust created by the Grantor or any other person at any time, if the Trustee determines such other trust contains substantially the same terms as a Trust created hereunder for the same beneficiary or beneficiaries, and thereafter may administer such consolidated and merged trusts as one; but if such consolidation and merger does not appear desirable or feasible, the Trustee may consolidate the assets of such trusts for purposes of investment and administration while retaining separate records and accounts for the separate trusts.

4.32   **Distribution Election**:   To elect, pursuant to the terms of any employee benefit plan, individual retirement plan or insurance contract, the mode of distribution of the proceeds thereof, and no adjustment shall be made in the interests of the beneficiaries to compensate for the effect of the election.

---

4.33   **Conditional Acceptance of Real Property**:   Before accepting any contributions of property to this trust, the Trustee shall be entitled, in its sole discretion, without cost to the fiduciary, and as a prerequisite to accepting any such contribution to this trust, to require evidence satisfactory to the Trustee that (1) the property is not contaminated by any hazardous or toxic materials or substances; and (2) the property is not being used and has never been used for any activities directly or indirectly involving the generation, use, treatment, storage, disposal, release, or discharge of any hazardous or toxic materials or substances.

4.34   **Power to Disclaim Real Property**:   The Trustee shall have the power to disclaim any power which, in the sole discretion of such fiduciary, will or may cause the Trustee to be considered an "owner" or "operator" of property held in any trust created hereunder as those terms are defined in the Comprehensive Environmental Response Compensation and Liability Act, (CERCLA), as amended from time to time, or which shall otherwise cause the Executor or Trustee to incur liability under CERCLA or any other federal, state, or local law, rule, or regulation.   The power to disclaim as contained in this section shall apply to any power, whether actually set forth herein, or granted or implied by any statute or rule of law.

4.35   **Charitable Contributions**:   The Trustee may create a charitable remainder subtrust if, in the Trustee's discretion, such subtrust would be consistent with the Grantor's intent and in the best interest of the beneficiaries.

# ARTICLE V

# MISCELLANEOUS PROVISIONS

5.01 **Word Usage and Captions**:  Whenever words are used herein in any gender, or in the singular or plural form, they shall be construed as though they were used in the gender or form appropriate to the circumstances.  Headings and captions of this Agreement are inserted for convenience or reference and constitute no part of this Agreement nor are they to be considered in the construction hereof.

5.02 **Laws of Florida Control**:  This Agreement shall be construed under the laws of the State of Florida now or hereafter in effect.

5.03 **Grantor's Right to Occupy Homestead:**   In the event that the Trust estate property includes the primary permanent residence of Grantor, Grantor shall have the exclusive right to use, occupy and reside in said residence during Grantor's life.  It is the intent of this provision to preserve in Grantor the requisite beneficial interest and possessory right in and to such real property to comply with Section 196.031 of the Florida Statutes, such that Grantor's possessory right constitutes, in all respects, "equitable title to real estate, " as that term is used in Section 6, Article 7, of the Constitution of the State of Florida. Notwithstanding anything else contained in this Trust Agreement to the contrary, the interest of Grantor in any real property upon which Grantor resides pursuant to the provision of this Trust shall be deemed to be an interest of real property and not personalty.  So long as Grantor occupies such residence, Grantor shall be entitled to the homestead exemption on such property.

5.04   **Perpetuities**:   Notwithstanding anything contained herein to the contrary, each Trust created hereunder which at the time of last surviving Grantor's death is not certain to vest or terminate no later than twenty-one (21) years after the death of an individual then alive or within 360 years after its creation, shall in any event terminate upon the expiration of the period expressed in Section 689.225(2)(a) and (f) of the Florida Statutes, as amended, or any amendment thereto of similar purpose and intent. At the end of such period, Trustee shall distribute each remaining portion of the Trust property to the beneficiary thereof, and if there is more than one beneficiary, in the proportions in which they are beneficiaries.

5.05   **No Bond Required**:   No Trustee named herein need give bond in any jurisdiction.  If a fiduciary's bond may not be dispensed with, the Undersigned request that the bond be accepted without surety and in the lowest possible amount.  In the absence of breach of trust, no Trustee shall ever be required to qualify before, be appointed by, or account to any court, or obtain the order or approval of any court in the exercise of any power or discretion herein given.

5.06   **Resolution of Conflict and Litigation**:   Any controversy between the Trustee or Trustees and any other Trustee or Trustees, or between any other parties to this Trust, including beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this Trust shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the two persons so chosen shall select a third impartial

---

The **JAMES STAPLETON** Trust                                                                                        29

arbitrator whose decision shall be final and conclusive upon both parties.  The cost of arbitration shall be born by the losing party or in such proportion as the arbitrator(s) shall decide.  Such arbitrations shall comply with the commercial Arbitration Rules of the American Arbitration Association, 140 West 51st Street, New York, New York  10200.

The Grantor desires that this Trust, the Trust Estate and the Trust administrators and beneficiaries shall not be involved in time-consuming and costly litigation concerning the function of this Trust and disbursement of the assets.  Therefore, the Grantor has taken great care to designate, through the provisions of this Trust, how he wants the Trust Estate distributed.  Therefore, the Grantor has taken great care to designate, through the provisions of this Trust, how the Trust Estate is to be distributed.

If litigation becomes necessary, the expense of such litigation, including costs incurred by representatives of the Grantors' estate, the Trustees of this Trust and their agents, attorneys, accountants and representatives shall be paid for by the Trust.

5.07   **Competency of Grantor**:  The Grantor hereby declares that the Grantor may, by separate addendums to this Agreement, designate or appoint two (2) of the following persons, from one or more categories listed below, who shall be authorized and empowered to examine, evaluate and determine the competency of the appointing Grantor or Trustee of this Agreement:

a)      Licensed Physician or Chiropractor

b)      Licensed Psychologist

The **JAMES STAPLETON** Trust

    c)          Licensed Social Worker

    d)          Mental Retardation Team

Those appointed from the above categories, hereinafter referred collectively as "physicians," shall be authorized and empowered to confirm in writing, in the Statement of Expert Evaluation or a successor document, the competency or incompetency of the appointing Grantor or Trustee as defined by applicable Code Sections relevant to the situs of the Trust or a successor code. Their joint decision shall be binding upon the Grantor, Trustees and Beneficiaries of this Trust.

If the Grantor has not named two physicians of his choice by separate addendum, or if one or both of the physicians named are unable or unwilling to serve, the Grantor hereby authorizes his "Agent" appointed under his **Designation of Health Care Surrogate**, to name one or both physicians, as appropriate, to determine his competency in accordance with the foregoing provisions.

If the Grantor or Trustee who has been declared incompetent because of mental impairment (caused by physical of mental illness or disability, mental retardation, or chronic substance abuse), by two (2) physicians, should recover and feel capable of taking proper care of himself and the Trust estate, that Grantor or Trustee may have his competency restored by one of the following procedures:

1.      <u>Confirmation of Competency</u>:  Competency may be established according to the provisions of the Grantor's **Competency Clause Addendum** and

---

The **JAMES STAPLETON** Trust             31

may be confirmed in writing by two (2) physicians listed in said Addendum, or by any two (2) physicians appointed at the sole discretion of the other Co-Trustee or Successor Trustee or in the alternative by two (2) physicians appointed by the Grantor's "Agent" in said Grantor's **Designation of Health Care Surrogate**; or

2.      Application to Terminate Incompetency:     Application to terminate incompetency may be made to a court of competent jurisdiction, within the jurisdiction of the situs of the Trust at that time.

5.08   **Definitions**:  The following definitions shall be used in construction of this Agreement:

a.      Family:  The Family of the Grantor presently consists of the Grantor and the Grantor's children, **VICTORIA POUNCY, ANNETTE STAPLETON, VANESSA WILKINS AND MARISSA STAPLETON**.

b.     Child, Children, Etc.:  As used herein, the word "child", "children", and "issue" includes persons by or through birth or legal adoption, but no issue shall lose his status by being adopted by another person, despite any statute to the contrary.  Presently, the children of the Grantor consists of those children listed in subsection (a) of this paragraph, plus any children or individuals listed hereafter which the Grantor acknowledges, but intends to disinherit.

c.      Support:  "Support" shall include (but shall not be limited to) the expenses of the last illness, funeral and burial of a beneficiary.

---

The **JAMES STAPLETON** Trust                                                                 32

d. <u>Education</u>:  The word "education" shall include (but shall not be limited to) tuition, room, board, books, travel, to and from school, and reasonable miscellaneous expenses at any public or private secondary, college, graduate, professional, vocational, art, music and seminary school and any other schooling approved by the Trustee, in his or her absolute discretion, which the Trustee feels will enable a beneficiary to pursue a career and be financially independent.

e. <u>Health</u>:  The word "health" shall include (but shall not be limited to) all necessary or advisable medical, surgical, optical, dental, nursing (including practical nurses), diagnostic, hospital, and nursing home care, and all expenses related thereto.

5.09    **<u>Intent of Grantor Regarding Distribution of Assets</u>**:    The Grantor, **JAMES STAPLETON**, declares he has carefully considered the distributions that have been directed in this Trust Agreement and acknowledge that he has taken into consideration all individuals, including both relatives and non-relatives, that have been named as beneficiaries of this Trust Agreement.

The Grantor further declares that it is his desire and intent that the provisions of this Trust Agreement are to remain confidential as to all parties.  The Grantor directs that only the information concerning the benefits paid to any particular beneficiary shall be revealed to such individual and that no individual shall have the right to information concerning the benefits paid to any other beneficiary.

In the event that any court of law determines that any individual who is not named as a beneficiary shall have the right to any interest in the Trust Estate, the Grantor directs that such individual shall be given One and no/100 Dollars ($1.00) only.

5.10   **Advancements**:   The Trustee shall make any loan to a beneficiary or potential beneficiary as directed by the Grantors and the Trustee shall, reduce a beneficiary's share by the amount of any loans which were made to that beneficiary and which have not been repaid as recorded in "**Schedule B**".

5.11   **Intention to Avoid Probate**:   It is the intention of the Grantor to avoid probate through the use of this Trust Agreement.   If, however, the Trustee(s) of this Trust and the Executor(s) of the estate of the Grantor mutually determine that it shall be in the best interests of the beneficiaries of the Trust, and the beneficial interests of the beneficiaries shall not hereby be altered, the Trustee(s) may subject any asset to probate to accomplish a result unavailable without probate (ex.: to bar future creditor claims).

5.12   **QSST Provisions**:   Additionally, if any stock transferred to this Trust qualifies as S-Corporation Stock pursuant to Internal Revenue Code Section 1361, said stock shall be allocated into a separate share, known as the QSST share, and shall be managed according to the following provisions:

    1.    During the life of the transferor of said stock, the sole beneficiary of the QSST share shall be the transferor of said stock.

---

2.      Any income or corpus of the QSST share shall be distributed only to the transferor.

3.      The transferor's right to receive income from the QSST share shall terminate upon the earlier of the transferor's death or the termination of this Trust.

4.      If the Trust terminates during the life of the transferor, the QSST share shall distribute all of its assets to the transferor.

5.      Upon the death of the transferor, the QSST share shall merge with the residue of this Trust.

5.13  **Disclaimer**: A person who is to receive a beneficial interest under any Trust created by this instrument may disclaim all or any portion of that interest at any time before accepting it or its benefits. Any person receiving a beneficial interest under any Trust created by this instrument may release all or any portion of that person's interest not previously disclaimed at any time or times after accepting a part of it or its benefits. A beneficial interest may be disclaimed or released with respect to amount, fractions, or percentages of that interest, or with respect to particular assets, as the person having that interest determines. Each disclaimer shall be made pursuant to the provisions of Section 2518 of the Internal Revenue Code. In addition to any other method of disclaimer or release recognized by law, a beneficial interest may be disclaimed or released by an acknowledged instrument executed by the person disclaiming that interest, and delivered to the Trustee.

---

5.14   **Intention to Establish Contract**:  It is the Grantor's intention that the provisions of this Trust in general, and this section in particular, establish a contract between the Grantor, to convey to the Trustee, (and successor trustee), all of the Grantor's property, whether now owned or later acquired.

# **SIGNATURE**

This is to witness that I, **JAMES STAPLETON** have read the provisions of this **JAMES STAPLETON** Living Trust Agreement and understand the provisions therein.

IN WITNESS WHEREOF, the provisions of the Declaration of Trust shall bind **JAMES STAPLETON** as Grantor, and **JAMES STAPLETON** as Trustee; Successor Trustees assuming the role of Trustee hereunder, and the Beneficiaries of this Trust, as well as their successors and assigns.

This Living Trust executed at ORLANDO, Florida on     JUN 2 3 2003

**JAMES STAPLETON**
GRANTOR

**JAMES STAPLETON**
TRUSTEE

Signed and sworn to (or affirmed) in the presence of:

WITNESS    (Signature)           WITNESS    (Signature)

ALTON D. ALLEN           Lawrence H. Carberry
WITNESS    (Print Name)          WITNESS    (Print Name)

The **JAMES STAPLETON** Trust                                        37

STATE OF FLORIDA      )
                        )    SS:

COUNTY OF ORANGE   )

Before me this _____ JUN 2 3 2003 _____, appeared **JAMES STAPLETON**

_____ who is personally known to me, or

__X__ who produced _Florida Drivers License_ as identification

as Grantor, and who, in my presence, did subscribe his name to the foregoing instrument, a **Revocable Trust**, and who did swear (or affirm) that the statements contained therein are true and that he signed the document of his own free will.

_Carl Lee Dornshuld_                   SEAL
Notary Public    (Signature)
Carl Lee Dornshuld
My commission expires:

Carl Lee Dornshuld
★ My Commission CC943219
Expires June 06, 2004

STATE OF FLORIDA      )
                        )    SS:

COUNTY OF ORANGE   )

Before me this _____ JUN 2 3 2003 _____, appeared **JAMES STAPLETON**

_____ who is personally known to me, or

__X__ who produced _Florida Drivers License_ as identification

as Trustee, and who, in my presence, did subscribe his name to the foregoing instrument, a **Revocable Trust**, and who did swear (or affirm) that the statements contained therein are true and that he signed the document of his own free will.

_Carl Lee Dornshuld_                   SEAL
Notary Public    (Signature)
Carl Lee Dornshuld
My commission expires:

Carl Lee Dornshuld
★ My Commission CC943219
Expires June 06, 2004

The **JAMES STAPLETON** Trust                  38

## ASSET TRANSFER

## ACKNOWLEDGMENT AND RELEASE

I, the Grantor, have been advised of the importance of assuring that my Trust be properly funded with my assets in order to accomplish my estate planning goals.  I understand that the confirmation of the completed transfer and the transfer of undisclosed, omitted and future assets is my sole responsibility. We hereby release the law firm of **CARL LEE DORNSHULD** of any and all liability which may arise out of incomplete or omitted asset transfers, intending this release to be binding on our heirs and beneficiaries.  I further understand that it is my responsibility to maintain the Trust **"Schedule A"** list of assets in a current and complete manner.


_James Stapleton_
**JAMES STAPLETON**
GRANTOR


Dated: _June 23, 2003_

---

The **JAMES STAPLETON** Trust

# SCHEDULE A

## ASSETS

The following Schedule of Assets is a record of any asset transferred to the Trust and includes any memorandum attached hereto and/or any asset bearing the name of this Trust in its title of ownership plus any personal property assigned to this Trust, and shall comprise the Trust Estate.

| Asset | Amount | Grantor's Initials | Date Transferred/ Initials of Trustee |
|-------|--------|--------------------|---------------------------------------|
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |
|       |        |                    |                                       |

The **JAMES STAPLETON** Trust

# SCHEDULE B

## GIFTS AND LOANS

| *Gift or Loan | Recipient | Amount | Grantor's Initials | Date |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

*G = Gift   L = Loan

_____

The **JAMES STAPLETON** Trust

# SCHEDULE C

## CHARITABLE DISTRIBUTIONS

| Name of Charity | Amount | Grantor's Initials | Date |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

For clarity and ease of distribution, charitable contributions should be expressed as a percentage of the assets in your estate to be distributed. If you prefer, you can designate a specific portion of your estate for charitable distributions in your Trust, then sub-divide that portion of your estate among several charitable organizations by listing appropriate percentages.

The **JAMES STAPLETON** Trust

# SCHEDULE D

# DESIRED DISTRIBUTION OF PERSONAL

# PROPERTY

Some of my personal belongings have special meaning to me.  I desire that, after my death, when this Trust Estate is distributed, these items, as listed below, be given to the people named.

**Description of Personal Property**

**Desired Recipient & Relationship**

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

**Signed**     **Signed**

_____

The **JAMES STAPLETON** Trust                                              43

# SCHEDULE D CONTINUED

# DESIRED DISTRIBUTION OF PERSONAL PROPERTY

Some of my personal belongings have special meaning to me.  I desire that, after my death, when this Trust Estate is distributed, these items, as listed below, be given to the people named.

**Description of Personal Property**

**Desired Recipient & Relationship**

_____

**Signed**

_____

**Signed**

The **JAMES STAPLETON** Trust

44

# Exhibit

# B

# AMENDMENT
## of
## THE REVOCABLE LIVING TRUST AGREEMENT ENTITLED

**"The JAMES STAPLETON Revocable Living Trust, dated June 23, 2003, JAMES STAPLETON, Grantor and/or Trustee."**

DATE OF AMENDMENT: *August 25, 2008*

This Trust Agreement was entered into by and between **JAMES STAPLETON, Grantor,** of the County of **ORANGE,** State of **Florida** and **JAMES STAPLETON, Trustee,** whose residence and tax mailing address is **313 KASSIK CIRCLE, ORLANDO, FLORIDA 32824-5808.**

## WITNESSETH

**Whereas,** the Grantor made and entered into a Revocable Living Trust Agreement dated June 23, 2003; and

**Whereas,** certain property was conveyed by the Grantor into said Living Trust; and

**Whereas,** the Grantor now desires to amend that Living Trust; and

**Whereas,** under the provisions of Revocation and Amendment contained in the afore-mentioned Living Trust, the Grantor reserved the right to amend said instrument; then

I, **JAMES STAPLETON,** the Grantor, do hereby amend Sub-Sections (a) and (e) of Section 3.01 and Section 4.02 of the aforementioned Trust to read as set forth on the following two pages which are attached hereto and which provisions are fully incorporated herein by reference and made a part hereof.

Otherwise, said **REVOCABLE LIVING TRUST AGREEMENT,** shall remain the same and in full force and effect.

IN WITNESS WHEREOF, the provisions of the Amendment of Trust shall bind **JAMES STAPLETON** as Grantor and as Trustee, as well as all Successor Trustees assuming the role of Trustee hereunder, all the Beneficiaries of this Trust and all of their successors and assigns.

I subscribe my name as Grantor and as Trustee to this Amendment this *25th* day of *August*, 2008, at *313 Kassik Cir Orlando*, Florida, in the presence of the attesting witnesses whose names appear below and who subscribe their names hereto at my request and in my presence.

**JAMES STAPLETON,**
**Grantor**

**JAMES STAPLETON,**
**Trustee**

Signed and sworn to in the presence of:

**WITNESS**          (Signature)

**WITNESS**          (Signature)

*ALTON D. ALLEN*
**WITNESS**          (Print Name)

*GLORIA BRATHWAITE*
**WITNESS**          (Print Name)

Page One of Three

# AMENDMENT
of
## REVOCABLE LIVING TRUST

## ATTACHMENT

3.01    (a)    **Division into Shares:** Except as authorized in Sections 4.27 and 4.28 of ARTICLE IV or as specifically required in Section 3.01 (d) of ARTICLE III, the Trustee shall first make any special distributions as set forth below in that Subsection entitled "Special Distributions and Personal Property Distributions". The Trustee shall then allocate the balance of the Trust Assets into separate shares so as to provide one (1) share for each person named as a primary beneficiary of the Grantor.

Each share shall be allocated as follows:

| Primary Beneficiary | Relationship to Grantor | Share | Percent |
|---|---|---|---|
| **VICTORIA POUNCY** | CHILD | 1 | 14.11 % |
| **ANNETTE STAPLETON** | CHILD | 1 | 14.11 % |
| **VANESSA WILKINS** | CHILD | 1 | 14.11 % |
| **MARISSA STAPLETON** | CHILD | 1 | 14.11 % |
| **SHAWANA STAPLETON** | CHILD | 1 | 14.11 % |
| **SHANNON STAPLETON** | GRANDCHILD | 1 | 14.11 % |
| **TASHA TOPPIN** | GRANDCHILD | 1 | 05.11 % |
| **TOYA TOPPIN** | GRANDCHILD | 1 | 05.11 % |
| **TURQUOISE TOPPIN** | GRANDCHILD | 1 | 05.11 % |

3.01    (e)    **Special Distributions and Personal Property Distribution**: Upon the death of the Grantor, the Trustee shall make the following special distributions.

Grantor's daughter, Marissa Stapleton, shall receive whatever house is owned by the Trust, whatever real estate it is situated upon and all things described in the Grantor's document entitled "ASSIGNMENT OF FURNITURE, FURNISHINGS AND PERSONAL EFFECTS".

Grantor's daughter, Marissa Stapleton, shall receive all the money that comes into the Trust from the Nationwide life insurance policy number 4263157 as a result of the Trust having been named the beneficiary of said policy.

Grantor's daughter, Marissa Stapleton, shall receive all of the money that comes into the Trust from the McCoy Credit Union account number 127532.

# AMENDMENT
of
## REVOCABLE LIVING TRUST

## ATTACHMENT

### Section 3.01 (e) Continued

The Grantor requests the Trustee to abide by **"Schedule D"** which is the Grantor's intentions directing the disposition of personal and household effects of every kind including, but not limited to furniture, appliances, furnishings, pictures, china, silverware, glass, books, jewelry, wearing apparel, and all policies of fire, burglary, property damage, and other insurance on or in connection with the use of this property. Otherwise, the personal and household effects of the Grantor shall be distributed with the remaining assets of the Trust Estate.

Except as authorized in Sections 4.27 and 4.28 of ARTICLE IV or as specifically required in Section 3.01 (d) of ARTICLE III, the Trustee may also, if he or she considers it advisable to do so, distribute or advance from said special distributions, at any time, to the intended beneficiaries, without interest, sufficient amounts to enable them to marry; to purchase a home; enter, purchase or improve a business; establish a professional office; take post-graduate work; purchase an automobile; or for other similar purposes. The Trustee's decision shall be final in all events.

In the event that any intended beneficiary of a special distribution predeceases the distribution or refuses the distribution, and there is no alternate designated to receive that distribution, or the alternate is also deceased or refuses the distribution, then the portion of this Trust which has been allocated for that special distribution shall be included with the balance of the Trust Estate for division into shares.

4.02   **Successor Trustee(s)**: Upon the death of the original Trustee, or if for any reason whatsoever he ceases to serve as Trustee hereunder, the Grantor nominates and appoints, my CHILD, **MARISSA STAPLETON** to serve as Trustee hereunder without the approval of the court. If **MARISSA STAPLETON** is unable or unwilling to serve, or to continue to serve, for any reason whatsoever, then and in that event the Grantor nominates and appoints, my GRANDCHILD, **SHAWANA L. STAPLETON** to serve as Trustee hereunder, without the approval of any court. If **SHAWANA L. STAPLETON** is unable or unwilling to serve, or to continue to serve, for any reason whatsoever, then and in that event the Grantor nominates and appoints, my GRANDCHILD, **SHANNON J. STAPLETON** to serve as Trustee hereunder, without the approval of any court.

Page Three of Three

STATE OF FLORIDA )
)  SS: _111 18-9648_
COUNTY OF _ORANGE_ )

    We, whose names are signed below, having been duly sworn, declared to the undersigned officer that the statements attributed to us in the attached or foregoing **AMENDMENT** dated _____ , which amends the Living Trust entitled **"The JAMES STAPLETON Revocable Living Trust, dated June 23, 2003, JAMES STAPLETON, Grantor and/or Trustee."**, are true.

_James Stapleton_
**JAMES STAPLETON**

_Alton D. Allen_
WITNESS   ( Signature )
_ALTON D. ALLEN_
WITNESS   ( Print Name )

_Gloria Brathwaite_
WITNESS   ( Signature )
_GLORIA BRATHWAiTE_
WITNESS   ( Print Name )

    Before me this _25th AUGUST, 2008_ , appeared **JAMES STAPLETON**

\_\_\_\_\_ who is personally known to me, or

\_✓\_ who produced _DL S314-440-26-282-0_ as identification

    and _ALTON D. ALLEN_ , a witness,
\_\_\_\_\_ who is personally known to me, or

\_✓\_ who produced _DL A450-004-35-461-0_ as identification

    and _GLORIA A BRATHWAITE_ , a witness,
\_\_\_\_\_ who is personally known to me, or

\_✓\_ who produced _B633-281-29-803-0_ as identification

and who, in my presence and in the presence of each other, did subscribe their names to the foregoing, an Amendment to a Revocable Living Trust Agreement, and to this Notarial Certificate, and who did swear that the statements attributed to them are true and that they signed of their own free will.

_[Notary signature]_
Notary Public   ( Signature )

NOTARY SEAL

_MARTINA R. RODRIGUEZ_
Notary Public   ( Print Name )
My Commission Expires _4/19/2010_

Notary Public State of Florida
Martina R Rodriguez
My Commission DD542478
Expires 04/19/2010

# Exhibit

# C

# LAST WILL AND TESTAMENT

## OF

## JAMES STAPLETON

I, **JAMES STAPLETON**, a resident and domiciled in ORANGE, Florida, being of sound and disposing mind and memory, do hereby make, publish and declare this to be my Last Will & Testament, and hereby revoke all prior Wills and codicils to wills, which I may have made.

## ARTICLE 1

## FAMILY

For information purposes, at the time of the execution of this Will, my family status is as follows. My children are, **VICTORIA POUNCY, ANNETTE STAPLETON, VANESSA WILKINS AND MARISSA STAPLETON**.  References to "my children" or "my child" mean my children or my child named above.

## ARTICLE 2

## TREATMENT OF BODILY REMAINS

I direct that my bodily remains be disposed of in a manner in which my Personal Representative(s) deems fit and proper.  My Personal Representative(s) shall pay all costs associated with burial expenses.

---

# ARTICLE 3

## SPECIFIC GIFTS OF TANGIBLE PERSONAL PROPERTY

I make the following gifts:

3.1     **Separate List for Tangible Personal Property**:  I may make gifts of tangible personal property by means of one or more separate written lists.  To be effective, a separate list must be signed by me, and must identify the items and persons to receive them with reasonable certainty.  If there is a conflict, I confirm the gift of that item made in the most recent list.  My Personal Representative(s) will not be bound by any written list produced or discovered more than two months after my death.

3.2     **Other Gifts**:  I give all my remaining tangible personal property not given by other provisions of this article, including furniture, household furnishings, motor vehicles, clothing, jewelry, and personal effects (together with all insurance on those items), to my Trust as identified in ARTICLE 4 below.

3.3     **Trust for Minors**:  If any beneficiary under this article is a minor, that beneficiary's inheritance shall be held in the above mentioned Trust and the Trustee shall hold that beneficiary's share for the use and benefit of the beneficiary during his or her minority. Alternatively, the Trustee in its discretion may cause all or any part of said share to be: distributed to the beneficiary or to any adult having custody of the beneficiary whenever the Trustee deems appropriate; sold and the proceeds used for the benefit of the beneficiary; sold and the proceeds added to the share of my estate to be held in trust for the beneficiary; or

---

disclaimed for and on behalf of the beneficiary.

## ARTICLE 4

### RESIDUARY ESTATE

I give all my residuary estate to the then serving trustees of **"The STAPLETON Revocable Living Trust, dated June 23, 2003, JAMES STAPLETON, Grantor and/or Trustee"**, created prior to the execution of this Will (referred to in this Will as "my Revocable Trust"), as it now exists or may be amended after the execution of this Will, for administration under its terms.  If the gift to that trust is ineffective for any reason, I give all my residuary estate to my Personal Representative(s), acting as Trustee(s) ("the Trustees"), upon the same terms and conditions set forth in that trust as of this date.  I incorporate those terms by reference, but only for the purpose of this contingent gift.

## ARTICLE 5

### APPOINTMENT OF PERSONAL REPRESENTATIVE

I appoint my CHILD, **MARISSA STAPLETON**, to serve as my Personal Representative. If **MARISSA STAPLETON** is unable or unwilling to serve, or to continue to serve, for any reason whatsoever, then and in that event I appoint my GRANDCHILD, **SHAWANA L. STAPLETON**, to serve as my alternate Personal Representative.   If **SHAWANA L. STAPLETON** is unable or unwilling to serve, or to continue to serve, for any reason whatsoever, then and in that event I appoint my GRANDCHILD, **SHANNON J. STAPLETON**, to serve as my alternate Personal Representative.

I direct that no Personal Representative be required to post bond or other security.

---

Last Will and Testament of **JAMES STAPLETON**                                                    3

# ARTICLE 6

## SURVIVAL PROVISIONS

If any beneficiary is required to survive me or another person to receive a distribution, and if the beneficiary does not survive me or that other person by 90 days, or if that beneficiary cannot be located within one year after my death despite reasonable attempts by the Trustee(s) to locate that beneficiary, the beneficiary will be treated as if he or she died before me or that other person.

# ARTICLE 7

## PAYMENTS OF OBLIGATIONS, EXPENSES AND TAXES

My Personal Representative(s) shall pay all of my obligations, expenses, and taxes as follows:

7.1     **Obligations:**   I direct that my legally enforceable obligations (except those secured by mortgages or other security instruments) be paid in the order and manner prescribed by law.

7.2     **Expenses and Taxes:**   The term "expenses" includes all estate transmission or management expenses of my probate estate and all costs of my last illness and funeral; the term "estate taxes" means all state and federal estate, inheritance, or transfer taxes payable by reason of my death (including the generation-skipping transfer tax on any direct skip created by the express terms of this Will rather than by disclaimer), plus any related interest and penalties attributable to these taxes, but excluding any other generation-skipping taxes.  I direct that all expenses of my estate and all estate taxes charged with respect to my gross

estate for estate tax purposes (including estate taxes on assets that do not pass under this Will) be paid by the Trustee of my Revocable Trust, as permitted under 733.817 and despite 738.05 of the Florida Statutes.  For these purposes, I incorporate by reference the tax apportionment provisions of my Revocable Trust.  To the extent these amounts are not paid by my Revocable Trust, they are to be paid from my residuary estate, without apportionment, except to the extent provided in my Revocable Trust as to non-probate and nontaxable assets.

## ARTICLE 8

## FIDUCIARY POWERS

I grant to my Personal Representative(s) and the Trustee(s) (collectively referred to as "the Fiduciary") full power to deal freely with any property in my estate.  The Fiduciary may exercise these powers independently and without the approval of any court.  No person dealing with the Fiduciary need inquire into the propriety of any of its actions or into the application of any funds or assets.  The Fiduciary shall, however, exercise all powers in a fiduciary capacity for the best interest of the beneficiaries of my estate, which for purposes of this article includes any trust created in this Will.  Without limiting the generality of the foregoing, the Fiduciary is given the following discretionary powers in addition to any other powers conferred by law:

8.1   **Type of Assets:**  Except as otherwise provided to the contrary, to hold funds un-invested for such periods as the Fiduciary deems prudent, and to invest in any assets the Fiduciary deems advisable even though they are not technically recognized or specifically listed in so-called "legal lists," without responsibility for depreciation or loss on account of

those investments, or because those investments are non-productive, as long as the Fiduciary acts in good faith.

8.2   **Original Assets**:  Except as otherwise provided to the contrary, to retain the original assets it receives for as long as it deems best, and to dispose of those assets when it deems advisable, even though such assets, because of their character or lack of diversification, would otherwise be considered improper investments for the Fiduciary.

8.3   **Tangible Personal Property**:  To receive and hold tangible personal property; to pay storage and insurance charges for such property; to permit any beneficiaries to use such property without either the Fiduciary or beneficiaries incurring any liability for wear, tear, and obsolescence of the property; and in its discretion to abandon or dispose of any such property which has little or no monetary or useful value after having consulted with the beneficiaries or their legal representatives.

8.4   **Specific Securities**:  To invest in assets, securities, or interests in securities of any nature, including (without limit) commodities, options, futures, precious metals, currencies, and in domestic and foreign markets and in mutual or investment funds, including funds for which the Fiduciary or any affiliate performs services for additional fees, whether as custodian, transfer agent, investment adviser or otherwise, or in securities distributed, underwritten, or issued by the Fiduciary or by syndicates of which it is a member; to trade on credit or margin accounts (whether secured or unsecured); and to pledge assets of my estate for that purpose.

8.5   **Property Transactions**:  To buy, sell, exchange, or lease any real or personal property, publicly or privately, for cash or credit, without court approval and upon the terms and conditions that the Fiduciary deems advisable; to execute deeds, leases, contracts, bills of sale, notes, mortgages, security instruments, and other written instruments; to improve, repair, insure, subdivide and vacate any property; to adjust boundaries; and to impose easements, restrictions, and covenants as the Fiduciary sees fit.  A lease will be valid and binding for its full term even if it extends beyond the full duration of my estate.

8.6   **Borrow Money**:  To borrow money from any source (including the Fiduciary in its non-fiduciary capacity), to guarantee indebtedness, and to secure the loan or guaranty by mortgage or other security interest.

8.7   **Maintain Assets**:  To expend whatever funds it deems proper for the preservation, maintenance, or improvement of assets.  The Fiduciary in its discretion may elect any options or settlements or exercise any rights under all insurance policies that it holds.  However, no fiduciary who is the insured of any insurance policy held in my estate may exercise any rights or have any incidents of ownership with respect to the policy, including the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke any assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy.  All such power is to be exercised solely by the remaining Fiduciary, if any, or if none, by a special fiduciary appointed for that purpose by a court having jurisdiction.

---

8.8     **Advisers:**   To employ and compensate attorneys, accountants, advisers, financial consultants, managers, agents, and assistants (including any individual or entity who provides investment advisory or management services, or who furnishes professional assistance in making investments for my estate) without liability for any act of those persons, if they are selected and retained with reasonable care.   Fees may be paid from the domiciliary estate even if the services were rendered in connection with ancillary proceedings.   The Fiduciary may serve in any of these capacities and be compensated separately for its services in each.

8.9     **Indirect Distributions:**   To make distributions, whether of principal or income, to any person under age 21 or to any incapacitated person according to the terms of this Will by making distributions directly to that person whether or not the person has a guardian; to the parent, guardian, or spouse of that person; to a custodial account established by the Fiduciary or others for that person under an applicable Uniform Gift to Minors Act or Uniform Transfers to Minors Act; to any adult who resides in the same household with that person or who is otherwise responsible for the care and well-being of that person; or by applying any distribution for the benefit of that person in any manner the Fiduciary deems proper.   The receipt of the person to whom payment is made will constitute full discharge of the Fiduciary with respect to that payment.

8.10   **Non-Pro Rata Distribution:**   To make any division or distribution in money or in kind, or both, without allocating the same kind of property to all shares or distributees, and without regard to the income tax basis of the property.   Any division will be binding and

---

conclusive on all parties.

8.11 **Nominee**: Except as prohibited by law, to hold any assets in the name of a nominee without disclosing the fiduciary relationship; to hold the property unregistered, without affecting its liability; and to hold securities endorsed in blank, in street certificates, at a depository trust company, or in a book entry system.

8.12 **Custodian**: To employ a custodian or agent ("the Custodian") located anywhere within the United States, at the discretion of the Fiduciary but at the expense of my estate, whether or not such Custodian is an affiliate of the Fiduciary or any person rendering services to my estate; to register securities in the name of the Custodian or a nominee thereof without designation of fiduciary capacity; and to appoint the Custodian to perform such other ministerial functions as the Fiduciary may direct.  While such securities are in the custody of the Custodian, the Fiduciary will be under no obligation to inspect or verify such securities nor will the Fiduciary be responsible for any loss by the Custodian.

8.13 **Settle Claims**: To compromise, arbitrate, or otherwise adjust claims in favor of or against my estate, to agree to any rescission or modification of any contract or agreement, and to refrain from instituting any suit or action unless indemnified for reasonable costs and expenses.

8.14 **Corporate Rights**: To vote and exercise any option, right, or privilege to purchase or to convert bonds, notes, stock (including shares or fractional shares of stock of any

Corporate Fiduciary), securities, or other property; to borrow money for the purpose of exercising any such option, right, or privilege; to delegate those rights to an agent; to enter into voting trusts and other agreements or subscriptions; to participate in any type of liquidation or reorganization of any enterprise; and to write and sell covered call options, puts, calls, straddles, or other methods of buying or selling securities, as well as all related transactions.

8.15 **Partnership Interests:** To hold interests in sole proprietorships, general or limited partnerships, joint ventures, business trusts, land trusts, limited liability companies, and other domestic and foreign forms of organizations; and to exercise all rights in connection with such interests as the Fiduciary deems appropriate, including any powers applicable to a non-admitted transferee of any such interest.

8.16 **Self-Dealing:** To exercise all its powers even though it may also be acting individually or on behalf of any other person or entity interested in the same matters. The Fiduciary, however, shall exercise these powers at all times in a fiduciary capacity, primarily in the interest of the beneficiaries of my estate. Despite any other provision of this Will, no Fiduciary may participate in the decision to make a discretionary distribution that would discharge a legal support obligation of that Fiduciary. All power to make such distributions will be exercised solely by the remaining Fiduciaries, if any, or if there are no other Fiduciaries then serving, by the person or persons named to serve as the next successor Fiduciary, or if there are none, by a special Fiduciary appointed for that purpose by a court having jurisdiction.

8.17    **Elections**:  To perform in a fiduciary capacity any act and make any and all decisions or elections under state law or the Internal Revenue Code on behalf of me or my estate, including but not limited to, joining in the filing of income and gift tax returns with my surviving spouse, claiming the whole or any part of the expenses of administration as income tax deductions for my estate, and selecting taxable years and dates of distribution.  The Fiduciary is specifically excused from making equitable adjustments among beneficiaries because of any election.

8.18    **Qualified Property**:  To manage any qualified real property or qualified family-owned business interests so as to avoid imposition of the additional estate tax under Sections 2032A or 2057 of the Internal Revenue Code, and to furnish security for the payment of any additional estate taxes imposed under those sections.

8.19    **Expenses:**  To determine, in a fiduciary capacity, how expenses of administration and receipts are to be apportioned between principal and income.

8.20    **Terminate Small Trusts**:  To exercise its discretion to refrain from funding or to terminate any trust whenever the value of the principal of that trust would be or is too small to administer economically, and to distribute the remaining principal and all accumulated income of the trust as provided in Section 8.9 to the beneficiaries then entitled to receive income in proportion to their shares of that income (or on a per capita basis if their shares are not fixed).  The Fiduciary shall exercise this power to terminate in its discretion as it deems prudent for the best interest of the permissible income

beneficiaries at that time.  This power cannot be exercised by my spouse or a beneficiary, either alone or in conjunction with any other Trustee, but must be exercised solely by the other Trustee, or if none, by a special Trustee appointed for that purpose by a court having jurisdiction.

8.21   **Allocation to Principal:**   To treat premiums and discounts on bonds and other obligations for the payment of money in accordance with either generally accepted accounting principles or tax accounting principles and, except as otherwise provided to the contrary, to hold nonproductive assets without allocating any principal to income, despite any laws or rules to the contrary.

8.22   **Use of Income:**   Except as otherwise provided in this Will, and in addition to all other available sources, to exercise its discretion in the use of income from the assets of my estate to satisfy the liabilities described in this Will, without accountability to any beneficiary.

8.23   **Sever Trusts:**   To sever any trust on a fractional basis into two or more separate trusts, and to segregate by allocation to a separate account or trust a specific amount from, a portion of, or a specific asset included in any trust.  The Fiduciary may consolidate two or more trusts (including trusts created by different transferors) having identical beneficial terms and conditions into a single trust.  A trust created by severance or consolidation will be treated as a separate trust for all purposes from the date on which the severance or consolidation is effective, and will be held on the same beneficial terms and conditions as

those before the severance or consolidation. Income earned on a consolidated or severed amount, portion, or specific asset after the consolidation or severance is effective will pass with that amount, portion, or specific asset.

8.24   **Consolidated Funds**:  Unless inconsistent with other provisions of this Will, to hold two or more trusts or other funds in one or more consolidated funds, in which the separate trusts or funds have undivided interests, except that an accounting must be rendered to each trust showing its undivided interests in those funds.

8.25   **Valuations**:  In making distributions or allocations under the terms of this Will to be valued as of a particular date, the Fiduciary may use asset valuations obtained for a date reasonably close to that particular date (such as a quarterly closing date before or after that date) if, in the Fiduciary's judgment, obtaining appraisals or other determinations of value on that date would result in unnecessary expense, and if in the Fiduciary's judgment, the fair market value as determined is substantially the same as on that actual date. This paragraph will not apply if valuation on a specific date is required to preserve a qualification for a tax benefit, including any deduction, credit, or most favorable allocation of an exemption.

8.26   **Incorporation**:  To incorporate any business or venture, and to continue any unincorporated business that the Fiduciary determines to be not advisable to incorporate.

8.27   **Delegation**:  To delegate periodically among themselves the authority to perform any act of administration of my estate.

8.28   **Advances:**   To make cash advances or loans to beneficiaries, with or without security.

8.29   **Investment Manager:**   To employ any investment management service, financial institution, or similar organization to advise the Fiduciary and to handle all investments of my estate and to render all accountings of funds held on its behalf under custodial, agency, or other agreements.  If the Fiduciary is an individual, these costs may be paid as an expense of administration in addition to fees and commissions.

8.30   **Depreciation:**   To deduct from all receipts attributable to depreciable property a reasonable allowance for depreciation, computed in accordance with generally accepted accounting principles consistently applied.

8.31   **Disclaim Assets or Powers:**   To disclaim any assets otherwise passing or any fiduciary powers pertaining to any trust created hereunder, by execution of an instrument of disclaimer meeting the requirements of applicable law generally imposed upon individuals executing disclaimers.  No notice to or consent of any beneficiary, other interested person, or any court is required for any such disclaimer, and the Fiduciary is to be held harmless for any decision to make or not make such a disclaimer.

8.32   **Transfer Situs:**   To transfer the situs of any trust or any trust property to any other jurisdiction as often as the Fiduciary deems advisable, and if necessary to appoint a substitute or ancillary Trustee to act with respect to that property.  The Fiduciary may delegate to the

---

substitute Trustee any or all of the powers given to the Fiduciary; may elect to act as advisor to the substitute Trustee and receive reasonable compensation for that service; and may remove any acting or substitute Trustee and appoint another, or reappoint itself, at will.

8.33   **Related Parties:**  To enter into any transaction on behalf of my estate despite the fact that another party to that transaction may be: (i) a business or trust controlled by the Fiduciary, or of which the Fiduciary, or any director, officer, or employee of the Corporate Fiduciary, is also a director, officer, or employee; (ii) an affiliate or business associate of any beneficiary or the Fiduciary; or (iii) a beneficiary or Trustee under this Will acting individually, or any relative of such a party.

8.34   **Additional Powers for Income-Producing Real Estate:**  In addition to the other powers set forth above or otherwise conferred by law, the Fiduciary has the following powers with respect to any income-producing real property which is or may become a part of my estate:

(i)   To retain and operate the property for as long as it deems advisable;

(ii)   To control, direct, and manage the property, determining the manner and extent of its active participation in these operations, and to delegate all or any part of its supervisory power to other persons that it selects;

(iii)   To hire and discharge employees, fix their compensation, and define their

duties;

(iv)    To invest funds in other land holdings and to use those funds for all improvements, operations, or other similar purposes;

(v)    Except as otherwise provided with respect to mandatory income distributions, to retain any amount of the net earnings for working capital and other purposes that it deems advisable in conformity with sound and efficient management; and

(vi)    To purchase and sell machinery, equipment, and supplies of all kinds as needed for the operation and maintenance of the land holdings.

# ARTICLE 9

## TAX ELECTIONS

I direct my Personal Representative(s) to make federal estate and generation-skipping tax elections as instructed by the Trustees of my Revocable Trust with respect to transfers under that trust. My Personal Representative(s) are to be held harmless from any liability in making elections as directed by those Trustees.

# ARTICLE 10

## NONMUTUAL WILL

This is not a mutual or reciprocal Will with any Will executed by any other person.  Any other person may amend, revoke, or redraw his or her Will at any time, regardless of any interest he or she may receive under this Will.

# ARTICLE 11

## TRANSACTIONS WITH OTHER ENTITIES

My Personal Representative(s) may buy assets from other estates or trusts, or make loans to them, so that funds will be available to pay claims, taxes, and expenses.  My Personal Representative(s) can make those purchases or loans even if they serve as the fiduciary of that estate or trust, and on whatever terms and conditions my Personal Representative(s) think are appropriate, except that the terms of any transaction must be commercially reasonable.

# SIGNATURE AND ATTESTATION

IN WITNESS WHEREOF, I have hereunto set my hand and declared this to be my Last

Will and Testament on _August 25, 2008_ .

Executed at _313 KASSIK CIRCLE_ (ORLANDO) Florida, on _August 25, 2008_ .

_James Stapleton_
**JAMES STAPLETON**

This instrument was signed, sealed, published, and declared by the testator as his Last Will in

our joint presence, and at his request we have signed our names as attesting witnesses in his presence

and in the presence of each other on the date first written above.

Name                                          Address

_Alton D Allen_                               _343 KASSIK Circle_
WITNESS       (Signature)                     _ORLANDO FL 32824_

_ALTON D. ALLEN_
WITNESS       (Print Name)

_Gloria Brathwaite_                           _434 LyTTon Circle_
WITNESS       (Signature)                     _Orlando Fl 32824_

_GLORIA BRATHWAITE_
WITNESS       (Print Name)

Last Will and Testament of **JAMES STAPLETON**                                          18

STATE OF FLORIDA        )

                            )    SS: *111 189648*

COUNTY OF  ORANGE    )

     I, **JAMES STAPLETON**, the testator, having been duly sworn, do swear that the contents contained in the attached or foregoing instrument, a **Last Will and Testament**, are true and that I signed said document of my own free will.

     We, the testator and the witnesses whose names are signed to the attached or foregoing instrument, and whose names are signed below, having been sworn, declared to the undersigned officer that the testator, in the presence of the witnesses, signed the instrument as his Last Will and Testament, that he signed willingly, and that each of the witnesses, in the presence of the testator and in the presence of each other, signed the Last Will and Testament as a witness.

                                      **JAMES STAPLETON**

**WITNESS**    (Signature)             **WITNESS**    (Signature)

ALTON D. ALLEN           GLORIA BRATHWAITE

**WITNESS**    (Print Name)           **WITNESS**    (Print Name)

     Before me this 25th AUG 2008 , appeared **JAMES STAPLETON**, the testator, who is personally known to me, or

✓   who produced  DL 5314-440-26-282-0  as identification

and  ALTON D. ALLEN , a witness

\_\_\_\_ who is personally known to me, or

✓   who produced  DL A450-004-35-461-0  as identification

and  GLORIA A. BRATHWAITE , a witness

\_\_\_\_ who is personally known to me, or

✓   who produced  DL B633-281-29-803-0  as identification

and who, in my presence, did subscribe their names to this and the foregoing instrument, a **Last Will and Testament**, and did swear to (or affirm) the statements attributed to them above.

                                     NOTARY SEAL

Notary Public    (Signature)

MARTINA R. RODRIGUEZ

Notary Public    (Print Name)

My commission expires:  4/19/2010

> NOTARY PUBLIC
> STATE OF FLORIDA
>
> Notary Public State of Florida
> Martina R Rodriguez
> My Commission DD542478
> Expires 04/19/2010

Last Will and Testament of **JAMES STAPLETON**           19